# Exhibit B

**DOCUMENT REDACTED PURSUANT TO PENDING MOTION TO SEAL**

FILED

MAY 20 2026

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNTS **Redacted**<br>**Redacted**<br>THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 5:26-mj-1775-Bm

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated as if fully restated herein.

located in the _____ **Northern** _____ District of _____ **California** _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B incorporated as if fully restated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 875(c) | Interstate transmission of threats |
| 18 USC 871 | Threats against the President |

The application is based on these facts:

See the attached affidavit, incorporated as if fully restated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent April Floyd
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ **telephone** _____ *(specify reliable electronic means)*.

Date: **May 20, 2026; 3:59 pm**

*Judge's signature*

City and state: Raleigh, NC

Brian S. Meyers, United States Magistrate Judge
*Printed name and title*

PLA

No. 5:26-mJ-1775-Bm

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNTS **Redacted** THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | UNDER SEAL |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, **Special Agent April B. Floyd**, being first duly sworn, hereby depose and state as follows:

### I. INTRODUCTION

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since March of 2016. I am currently assigned to the FBI Charlotte Division, Wilmington Resident Agency, where I am assigned to investigate complex white collar crimes involving violations of federal law. In my current capacity, I am assigned to investigate public corruption related crimes, deprivations of civil rights, including hate crimes, color of law violations, and violations of the FACE Act and the Hobbs Act, among other federal violations. I previously investigated matters involving complex drug investigations focusing on Transnational Organized Crime in the Western Hemisphere. I received extensive training in investigations as a New Agent Trainee at the FBI Academy in Quantico,

Page 1 of 21

PLA

007648

Virginia. Prior to my employment with the FBI, I was a state law enforcement agent for four (4) years in the State of North Carolina responsible for administering the Unauthorized Substances Tax. I was also a patrol officer at a local law enforcement agency for a year. I have approximately fifteen (15) years of combined law enforcement experience. My training has continued through in-service training seminars during my assignment as an FBI Special Agent. I have participated in ordinary methods of investigation, including, but not limited to, consensual monitoring, physical surveillance, interviews of witnesses and subjects, the use of confidential informants, the use of undercover agents, the execution of digital and physical search warrants, Title III court-ordered interceptions, and FISA court-ordered interceptions. Through these investigations, my training and experience, and conversations with other agents and law enforcement personnel, I have become familiar with methods used by individuals to commit violations of federal law.

2. As a federal agent, I am authorized to investigate violations of laws and to execute warrants issued under the authority of the United States.

3. I make this affidavit in support of an application for a search warrant for information associated with the Google accounts uniquely identified by the email addresses **Redacted** "SUBJECT ACCOUNT 1"), **Redacted** ("SUBJECT ACCOUNTS 2"), that is stored at premises owned, maintained, controlled or operated by Google LLC ("Google"), a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043. The information to be searched is described in

Page 2 of 39

the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

4.     The statements contained in this Affidavit are based in part on information provided by FBI Special Agents, United States Secret Service (USSS) Special Agents, and local law enforcement partners; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; and my experience, training, and knowledge as a Special Agent with the FBI. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that a violation of 18 U.S.C. § 875(c), and/or 18 U.S.C. § 871 has been committed by James Comey (referred to hereinafter as Comey), the known user of the **SUBJECT ACCOUNT 1**, and contraband and evidence, fruits, and instrumentalities of those violations will be found in the **SUBJECT ACCOUNT 1 and SUBJECT ACCOUNTS 2**.[1]

---

[1] According to information provided by Google subsequent to the service of Federal grand jury subpoenas, Patrice Comey, (referred to hereinafter as Patrice) is the known user of

Redacted **SUBJECT ACCOUNTS 2**.



Page 3 of 39

007650

## II. STATUTORY AUTHORITY and JURISDICTION

5.      As noted above, this investigation concerns an alleged violation of 18 U.S.C. § 875(c), which prohibits communication containing any threat to kidnap any person or any threat to injure the person of another/transmitting a threat in interstate commerce and 18 U.S.C. § 871 which prohibits knowingly and willfully making threats to take the life of or inflict bodily harm upon the President of the United States. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C, §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is a "district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## III. DEFINITIONS

6.      The following definitions apply to this Affidavit:

a)      "Internet Service Providers" or "ISPs" are commercial organizations which provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers, including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer various means by which to access the Internet including telephone-based dial-up, broadband-based access via a digital subscriber line (DSL) or cable television, dedicated circuits, or satellite-based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth that the connection supports. Many ISPs assign each subscriber an account name such as a username or screen name,

P4

007651

an e-mail address, and an e-mail mailbox, and the subscriber typically creates a password for the account. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system and can access the Internet by using his or her account name and password.

b)  "IP Address" or Internet Protocol address is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static, that is, long-term, IP addresses, while other computers have dynamic, that is, frequently changed, IP addresses.

c)  "Computer" refers to an electronic, magnetic, optical, electrochemical, or other highspeed data processing device performing logical or storage functions and includes any data storage facility or communications facility directly related to or operating in conjunction with such device. *See* 18 U.S.C. § 1030(e) (1).

d)  "Storage Medium" means any physical object upon which computer data

PLA

Case 4:26-cr-00016-FL-RN    Document 40-2    Filed 07/28/26    Page 7 of 58

007652

can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

e) "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

f) "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates

P4

007653

"test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

g) "Computer-related documentation" consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

h) "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

i) "The Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

j) "Records" and "Information" include all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any

007654

photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

k) The term "mobile device," as used herein, is defined as a small, hand-held computing device, having a display screen, and an operating system (OS), with some type of input capabilities (such as a touch screen or a small keyboard), and is typically powered by a battery. Mobile devices are used to run various types of application software, known as "apps," as well as communication functions allowing voice telephone calls, email communications, SMS and MMS functions. Cell phones, "Smart phones", tablets, and PDAs are popular forms of mobile devices. Most handheld devices are often equipped with Wi-Fi, Bluetooth, and GPS capabilities, allowing the device to connect to the Internet and other devices (such as a vehicle or a microphone headset) or can be used to provide location-based services (like mapping and directional applications). Most mobile devices typically have an internal camera for taking and recording still image and video files, which are then stored within the memory of the mobile device or on a digital media storage device, like an SD card.

## IV. PROVIDER BACKGROUND[2]

7. Google is a United States company that offers to the public through its

---

[2] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages: the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

PLA

007655

Google accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

8.  In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

9.  Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

10.  Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

PLA

007656

11.     Google provides email services (called Gmail) to Google accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "contact," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

12.     Google provides an address book for Google accounts through Google Contacts. Google Contacts stores contacts added by the user, as well as contacts the user has interacted with in Google products, up to 25,000 contacts. Users can send messages to more than one contact at a time by manually creating a group within Google Contacts or communicate with an email distribution list called a Google Group. Users have the option to sync their Android device address book with their account, so it is stored in Google Contacts. Google preserves contacts indefinitely, unless the user deletes them. Contacts can be accessed from the same browser window as other Google products like Gmail and Calendar.

13.     Google provides an appointment book for Google accounts through Google Calendar, which can be accessed through a browser or mobile application. Users can create events or RSVP to events created by others. Google Calendar can be set to generate reminder emails or alarms about events or tasks, repeat events at specified intervals, track RSVPs, and auto-schedule appointments to complete periodic goals (like running three times a week). A single Google Account can set up multiple calendars. An entire calendar can be shared with other Google accounts by

PLA

007657

the user or made public so anyone can access it. Users have the option to sync their device calendar, so it is stored in Google Calendar. Google preserves appointments indefinitely, unless the user deletes them. Calendar can be accessed from the same browser window as other Google products like Gmail and Calendar.

14. Google provides several messaging services including Duo, Messages, Hangouts, Meet, and Chat. These services enable real-time text, voice, and/or video communications through browsers and mobile applications and also allow users to send and receive text messages, videos, photos, locations, links, and contacts. Google may retain a user's messages if the user has not disabled that feature or deleted the messages, though other factors may also impact retention. Google does not retain Duo voice calls, though it may retain video or voicemail messages.

15. Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can set up their personal computer or mobile phone to automatically back up files to Google Drive. Each user gets fifteen gigabytes of space for free on servers controlled by Google and may purchase more through a subscription plan called Google One. Google Drive allows users to share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google

PLA

007658

maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them.

16. Google Keep is a cloud-based notetaking service that lets users take notes and share them with other Google users to view, edit, or comment. Google Keep notes are stored indefinitely, unless the user deletes them.

17. Google offers a cloud-based photo and video storage service called Google Photos. Photos and videos can be shared with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

18. Google offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. Users can find and plan an itinerary using Google Trips. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a history of their

Page 12 of 39

P4

007659

Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely, unless the user deletes it.

19. Google collects and retains data about the location at which Google Account services are accessed from any mobile device. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it or opts to automatically delete their Location History and Web & App Activity after three or eighteen months. Accounts created after June 2020 auto-delete Location History and Web & App Activity after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.



007660

20. Google offers a free web browser service called Google Chrome which facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google Account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google Account in a record called My Activity.

21. Google also offers a video platform called YouTube that offers Google the ability to upload videos and share them with others. Users can create a YouTube channel where they can upload videos, leave comments, and create playlists available to the public. Users can subscribe to the YouTube channels of others, search for videos, save favorite videos, like videos, share videos with others, and save videos to watch later. More than one user can share control of a YouTube channel. YouTube may keep track of a user's searches, likes, comments, and change history to posted videos. YouTube also may keep limited records of the IP addresses used to access particular videos posted on the service. Users can also opt into a setting to track their YouTube Watch History. For accounts created before June 2020, YouTube Watch History is stored indefinitely, unless the user manually deletes it or sets it to auto-delete after three or eighteen months. For accounts created after June 2020, YouTube Watch History is stored for three years, unless the user manually deletes it or sets it to auto-delete after three or eighteen months.

22. Google integrates its various services to make it easier for Google accounts to access the full Google suite of services. For example, users accessing their

Page 14 of 39

PL4

007661

Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

23. When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

24. Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other

PLA

007662

log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

25. Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

26. In my training and experience, evidence of who was using a Google account and from where, as well as evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

27. Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and Internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.

PLA

007663

28. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.*, information indicating a plan to commit a crime), or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).

29. Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators or victims. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of additional victims and instrumentalities of the crimes under investigation.

30. Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## V. PROBABLE CAUSE

31. Based upon findings of the investigation to date, there is probable cause to believe that evidence, fruits, and/or instrumentalities of crimes, including violations of 18 U.S.C. § 875(c) and/or 871 are located in the Google accounts

Page 17 of 39

PLA

007664

associated with Google email address **Redacted**

(SUBJECT ACCOUNT 1), **Redacted** AND

**Redacted** (SUBJECT ACCOUNTS 2).

32. On May 15, 2025, the United States Secret Service (USSS) was notified of an Instagram post authored by Comey, while he was staying in Emerald Isle, North Carolina, utilizing the Instagram handle "comey." The post included a photo containing seashells arranged on a beach to form the numbers "86 47" and the caption "Cool shell formation on my beach walk." The post was reported to the USSS as a possible call for violence against President Donald J. Trump given the association of the numbers. Use of the number "86" to imply a specific meaning has been attributed to multiple origins and resulting meanings. The number "86" has been associated as a slang term having the meaning "to kill," and the number "47" is widely recognized as a reference to the 47th President of the United States of America, Donald J. Trump. Additionally, one (1) common belief is that the term "86" originated within the restaurant industry to mean "to throw out, to get rid of, or to refuse service to."[3] More recently, the term has been attributed to an organized crime context, in which it refers to taking someone "eight miles out of town" and putting them "six feet under." [4] In addition to serving as an Assistant United States Attorney for a number of years, Comey served as the former United States Attorney for the Southern District of New

---

[3] See e.g., What does 'Eighty-Six' mean?, Merriam-Webster Dictionary, https://www.merriamwebster.com/wordplay/eighty-six-meaning-origin; see also, What are the Origins of and Meaning of '86' ? The History Channel, https://www.history.com/articles/86-meaning.
[4] See e.g., What Does '86' Mean? White House Reacts to James Comey's Post, Newsweek (May 15, 2025,9:28PM), https://www.newsweek.com/what-does-86-mean-trumn-james-comev-instagram-2073055.

P4

007665

York from 2002-2003, as the United States Deputy Attorney General from 2003-2005, and as the Director of the Federal Bureau of Investigation from 2013-2017. Within these positions, Comey handled a variety of criminal cases, including serious crimes of violence committed by organized criminal organizations.[5]

33.     On May 15, 2025, shortly after he added the post to Instagram, Comey deleted the "86 47" post and authored an apology post and posted it to his Instagram account with the handle "comey," which stated, "I posted earlier a picture of some shells I saw today on a beach walk, which I assumed were a political message. I didn't realize some folks associated those numbers with violence. It never occurred to me but I oppose violence of any kind so I took the post down." Sometime after making the post on May 15, 2025, Comey attempted to call Emerald Isle Police Chief, Michael Panzarella (referred to hereinafter as Panzarella). Panzarella did not answer the phone, and Comey left him a voicemail. In the voicemail, Comey provided his cellular telephone number of **Redacted** Comey stated, "We're down here in Emerald Isle," and that he "accidentally caused some sort of um excitement on social media today by posting a picture of shells that I saw on the beach at The Point and didn't realize that some people interpret it in a dark way..." Comey went on to say that he made the post to Instagram, but took the post down and posted a statement stating he had no idea that people associated those numbers with violence, and he thought the shells arranged in the numbers "86 47" depicted  "a political message." Comey further

[5] See e.g., James B. Comey Bio, The Whitehouse Archives, https://georgewbush-whitehouse.archives.gov/government/comey-bio.html



007666

stated, "I said in my statement I had no idea people associate that with violence which of course I want no part of. But I just wanted to alert you to it because we had some...one of our neighbors walk up and give me the double bird...uh... from the beach as I sat on the porch. I hope that's the end of it, but I wanted to flag it for you all."

34. According to USSS reports, on May 15, 2025, Comey contacted USSS' Washington Field Office (WFO) via his cell phone number of Redacted and spoke to Assistant to the Special Agent in Charge (ATSAIC), Comey stated he was walking on the beach that afternoon with his wife (Patrice) and saw the seashells arranged on the sand. Comey stated he and Patrice originally thought the seashells depicted an address for a nearby house, but then Comey thought it was a political statement that someone else was making. Comey took a picture of the seashells and posted the picture.

35. On May 16, 2025, Comey was interviewed by the USSS. Comey's personal attorney, David Kelley (referred to hereinafter as Kelley), attended the interview telephonically. USSS Special Agents showed Comey printed screenshots of the Instagram account with the handle "comey," and Comey confirmed the Instagram account with the handle "comey" was in fact his account. Comey was shown two (2) posts that were made to his Instagram account on May 15, 2025, one (1) being a photo of seashells arranged on a beach displaying the numbers "86 47," and the second being a post containing an apology and explanation that the previous post had been taken down by him later in the day on May 15, 2025. Comey confirmed that he was the

P4

Case 4:26-cr-00016-FL-RN    Document 40-2    Filed 07/28/26    Page 22 of 58

007667

individual who uploaded both posts in question. When Comey was asked to explain why he posted the photo of the seashells, Comey stated that he found them during a walk on the beach with his wife (Patrice) in Emerald Isle, North Carolina. According to Comey, when they first saw the shells, Patrice thought it may have been an address number for a beachside house, but then Comey realized that it was a political message. In the voicemail discussed above that Comey left for Emerald Isle Police Department Chief Panzarella, Comey stated he saw the shells on the beach "at The Point." Comey followed the voicemail up with a text message.

**Redacted**

Comey denied placing the shells on the beach and denied knowing who placed the shells on the beach. According to Comey, Patrice suggested that he should take a

P4

007668

picture of the shells. Comey interpreted the number "86" as a term meaning to "ditch, dump, or replace" and the number "47" as representing President Trump. Comey told investigators he viewed this message strictly in a non-violent manner. Comey acknowledged that he was a "political opponent" of President Trump, but that he wished that no harm would come to the President. Comey did not feel that the post was reckless because he stated that at the time he made the post, he did not perceive that people would interpret his message in a dark manner.

36.　　　　On May 23, 2025, at approximately 9:53am, USSS Assistant to the Special Agent in Charge, Jamie Marcella (referred to hereinafter as Marcella), sent Kelley (Comey's Attorney) an email requesting the following: "the photograph taken on the beach of the seashells, screenshots of any text conversations related to the seashell photograph, any Instagram posts related to the seashell photograph, the signed SSF 1945, Release of Medical and Mental Health records. " On May 23, 2025, at approximately 2:29pm, Kelley responded to Marcella's email. Kelley emailed multiple screenshots, to include a screenshot of the photograph taken on the beach of the seashells and a screenshot of the image posted to Comey's Instagram account after the shell formation post was taken down:

Page 22 of 39

*P4*

007669

 

37.     Additionally, the screenshots sent by Kelley to the USSS contained part of the "camera roll" of Comey's phone and included small thumbnails of other photos in the Photo Library. It is typical for images in a camera roll to be ordered sequentially when they are taken. Other photos that appear after the shell formation photo include a t-shirt with numbers "86 46" and a partial cover of Comey's crime novel, FDR DRIVE. Comey's crime novel, FDR DRIVE, was released in May 2025 around the time of his Instagram post of the seashells on the beach.

38.     On May 17, 2025, USSS Agents telephonically interviewed Patrice on her telephone number of ‹Redacted›. Patrice told investigators that she and Comey found the shell formation, and she did not know who placed the seashells on the beach. Patrice recalled the term "86" from her time as a waitress, and in that context, "86" meant that the restaurant was out of an item, "like we're 86 on broccoli." Patrice told investigators she also thought the term could mean to dump or get rid of an item

P4A

007670

in a non-violent way. According to Patrice, sometime around 1600 hours on May 15, 2025, she received a text message from **Redacted** **Redacted**, stating that the post that Comey made was a call to violence against President Trump. Since this had not occurred to her, Patrice performed a search on Google of the numbers "86 47" and learned that it could be interpreted in a violent manner. Patrice immediately notified Comey about this interpretation, and he took down the post.

39.     On May 15, 2025, USSS Agents telephonically interviewed Redacted on Redacted telephone number of **Redacted** One (1) of Redacted friends sent Redacted a screenshot of Comey's post via text message. Redacted reported that Redacted worked in the restaurant industry and was familiar with the term "86" meaning that a restaurant was out of food or a type of ingredient; however, Redacted immediately perceived Comey's post to contain a violent meaning. Redacted immediately perceived the term "86 47" as a call to get rid of, in a violent way, or even to assassinate President Trump. Redacted told investigators Redacted contacted Patrice via text message to voice Redacted dissatisfaction and frustration with the post. Based on Comey's extensive experience as a lawyer and with the FBI, Redacted felt Comey must have known that "86 47" was a call for violence.

40.     On August 22, 2025, the USSS executed a search warrant on Meta for information associated with Comey's Instagram account (see 5:25-MJ-2073-J6). According to Meta, the registered email address for the account was **Redacted** The email was listed as "verified" which indicated the account holder responded to an email sent to the listed email address.



007671

The name on the account was James Comey and the verified phone number on the account was ⬛ Redacted ⬛

41.     According to the Meta returns, on May 15, 2025, at approximately 19:14:04 UTC (3:14pm EDT), the "comey" Instagram account posted the following photo:



42.     The source of the photo was listed as iOS Library with an upload IP of

⬛ **Redacted** ⬛ The

status of the post was listed as "Deleted by user," but Meta records do not record/report the time of deleted posts.

43.     According to the Meta returns, on May 15, 2025, at approximately 22:25:05 UTC (6:25pm EDT), the "comey" Instagram account posted the following:

P4

---

[6] Based on a search using https://ipwhois.io/

007672

I posted earlier a picture of some shells I saw today on a beach walk, which I assumed were a political message. I didn't realize some folks associate those numbers with violence. It never occurred to me but I oppose violence of any kind so I took the post down.

44.     On November 17, 2025, and again on February 20, 2026, the FBI submitted a preservation request to Apple for iCloud account data associated with Comey's number of **Redacted** On November 19, 2025, a Federal Grand Jury Subpoena was served on Apple for information for accounts associated with telephone number **Redacted**. On November 26, 2025, in response to the subpoena, Apple provided information for two (2) accounts associated with phone number **Redacted** **Redacted** one (1) with apple ID **Redacted** SUBJECT ACCOUNT 1) and one (1) with Apple ID **Redacted**

45.     According to the Apple returns, the **SUBJECT ACCOUNT 1** uses the following iCloud features: iCloud Backup, Bookmarks, Calendars, iCloud Photos, Contacts, Find My friends, iCloud Drive, Messages in iCloud, Notes, and Sign in with Apple. Apple additionally provided iCloud logs for the account from November 13, 2024 to November 14, 2025. The logs show the **SUBJECT ACCOUNT 1** utilized the Cloud Photo Library service via IP address **Redacted** (the IP address associated with the May 15, 2025 post) as recently as November 10, 2025.

46.     On April 2, 2026, the FBI executed a search warrant on Apple for

Page 26 of 39

P4A

007673

information associated with Comey's Apple ID  **Redacted** (**SUBJECT ACCOUNT 1**) (see 5:26-MJ-1468-JG).

47.     In the email described above that David Kelley sent to the USSS that contained various screenshots, the following screenshot was sent by Patrice to Comey on May 15, 2025, at 3:12pm:

**Patrice** ›
an, VA

Thu, May 15 at 3:12 PM

J.S. English slang, "86" means **to t rid of or to refuse service**. It's en used in restaurants and bars to licate that an item is out of stock bar a customer from being rved.

According to the Meta returns, Comey posted the "86 47" post to Instagram at 3:14pm, which was two (2) minutes after Patrice sent him a screenshot of definition of the term "86." The screenshot appeared to be of an Internet search of the term "86." During her interview with USSS, Patrice admitted that she performed a Google search of the term, but stated she did so after **Redacted** made her aware that the term "86" could be interpreted in a violent manner. Federal Bureau of Investigation Agents interviewed Redacted on April 13, 2026, and obtained the text messages sent between Redacted and Patrice. Redacted sent the text message to Patrice

Page 27 of 39



alerting her of the violent nature of the term "86" on May 15, 2025, at 4:52pm

(CDT), which was 5:52pm Eastern Daylight Time.





007675

48. Included in the screenshots Kelley provided the USSS in the email discussed above, it appears Comey drafted two (2) variations of his apology post. On May 15, 2025, at 6:21pm Eastern Daylight Time, the following screenshot was taken:





The screenshot also appeared in the Apple returns as "IMG_6894.PNG" with the source being "CLOUDPHOTOLIBRARY" and **Redacted**

Page 29 of 39

On May 15, 2025, at 6:23pm Eastern Daylight Time, the following screenshot was taken:



The screenshot also appeared in the Apple returns as "IMG_6895.PNG" with the source being "CLOUDPHOTOLIBRARY" and [Redacted] The main difference in the two (2) variations of the apology post was the addition of the explanation that Comey interpreted the meaning depicted by the shells as a "political message."

49.      According to the Apple returns, on May 15, 2025, local time of 18:23:12 (approximately 6:23pm Eastern Daylight Time), a screenshot was taken of what



007677

appeared to be an email being drafted from <span>**Redacted**</span>

(**SUBJECT ACCOUNT 1**). In the body of what appeared to be an email, was a paragraph. The exact wording in the paragraph was later posted to Comey's Instagram account on May 15, 2025, after Comey deleted the "86 47" post.





50.       According to the Meta returns, Comey posted the apology post to Instagram on May 15, 2025, at 22:25:05 UTC (6:25pm EDT).

51.       After Comey's posts to Instagram, he participated in appearances on various media outlets. Comey's calendar entries were included in the Apple returns

PLA

007678

and included some of the following media engagements:

a.) "Start Time: 5/15/2025 3:00:00 PM(UTC+0) End time: 5/15/2025 4:00:00 PM(UTC+0) Subject: Times of London interview Organizer: Attendees: Location: Zoom Details:".

b.) "Start Time: 5/19/2025 6:30:00 PM(UTC+0) End time: 5/19/2025 7:00:00 PM(UTC+0) Subject: Colbert pre call Organizer: Attendees: Location: Details:".

c.) "Start Time: 5/19/2025 8:15:00 PM(UTC+0) End time: 5/19/2025 9:15:00 PM(UTC+0) Subject: Nicolle Wallace interview Organizer: Attendees: Location: Live NY Details:".

d.) "Start Time: 5/20/2025 9:30:00 PM(UTC+0) End time: 5/20/2025 10:30:00 PM(UTC+0) Subject: Colbert show Organizer: Attendees: Location: Ed Sullivan Theater Details:".

e.) "Start Time: 5/21/2025 12:00:00 AM(UTC+0) End time: 5/21/2025 1:00:00 AM(UTC+0) Subject: Anderson Cooper Organizer: Attendees: Location: Live CNN NY Details:".

f.) "Start Time: 5/21/2025 2:00:00 PM(UTC+0) End time: 5/21/2025 3:00:00 PM(UTC+0) Subject: NPR Morning Edition Organizer: Attendees: Location: Details:".

One (1) such appearance, which was reflected in Comey's calendar entries, was on The Late Show on May 20, 2025. During his appearance on the Late Show, Stephen Colbert asked Comey about the "86 47" Instagram post. Comey provided a detailed

Page 32 of 39

P4

007679

response to Colbert showing him a placard displaying the Instagram post. Darby Stanchfield (referred to hereinafter as Stanchfield), an actress in the ABC drama Scandal, answered questions about what it was like to be a late-night talk show guest. [7] According to Stanchfield, prior to appearances on late-night shows, producers of the shows conducted "pre-interviews." Stanchfield spoke of her experience as a guest on Jimmy Kimmel Live. As part of these interviews, producers of the show went over "stories, anecdotes, current events, etc. that you might think to share." Next, the producer reviewed the pre-interview with the host, and the producer and the host decided what to include in the show. According to Stanchfield, the subjects that were covered during the show with the guest were "planned out," and before the guest appeared on the show, the guest was advised what would be talked about on the show. Based on Stanchfield's account of appearing on a light-night show, I believe it is likely that Comey engaged in conversations prior to the interview regarding the topic of the "86 47" post, which likely included discussions via emails to/from Redacted (SUBJECT ACCOUNT 1).

52.     Comey's text messages, which were backed up to the iCloud and were provided via the Apple returns, were reviewed. The text messages included discussions related to the "86 47" incident and the controversy that resulted. Since discussions of the incident occurred via text message exchanges, it is reasonable to believe that similar communications  related to the "86 47" incident potentially occurred via email to/from Redacted (SUBJECT

[7] https://slate.com/human-interest/2014/11/jimmy-kimmel-what-is-it-like-to-be-a-late-night-talk-show-guest-on-his-show.html

P4

007680

ACCOUNT 1).

53.     As enumerated above, Comey posted the "86 47" post to this Instagram profile on May 15, 2025, at 19:14:04 UTC (3:14pm EDT). According to the Apple returns, the following screenshot was saved with the device associated with the Apple ID **Redacted** (SUBJECT ACCOUNT 1) on May 15, 2025, at 3:12pm:

In U.S. English slang, "86" means to get rid of or to refuse service. It's often used in restaurants and bars to indicate that an item is out of stock or to bar a customer from being served.  ∂

54.     On November 17, 2025, February 20, 2026, and May 1, 2026, the FBI submitted a preservation request to Google for data associated with Comey's number of **Redacted** and Patrice's number of **Redacted**. On November 19, 2025, a Federal Grand Jury Subpoena was served on Google for information for accounts associated with telephone number **Redacted** On November 20, 2025, in response to the subpoena, Google provided the following email addresses as being associated with telephone number **Redacted** **Redacted** (SUBJECT ACCOUNT 1), **Redacted** and listed the customer contact as "James B Comey Jr." On November 20, 2025, in

Page 34 of 39

P4

007681

response to the subpoena, Google provided the following email addresses as being associated with telephone number Redacted

Redacted

Redacted On December 05, 2025, a Federal Grand Jury Subpoena was served on Google for records associated with

Redacted

ACCOUNTS 2) . On January 27, 2026, Google provided information associated with Redacted (SUBJECT ACCOUNT 1) and listed the account holder name as "James B. Comey Jr." On January 27, 2026, Google provided information associated with Redacted and Redacted (SUBJECT ACCOUNTS 2) and listed the account holder name fo Redacted as " P Comey" with the account recovery email of " Redacted and listed the account holder name for Redacted as "Patrice Comey" with the account recovery email of ' Redacted Google returns also indicate that account Redacted utilized IP address Redacted to login on May 15, 2025. This is the same IP address used in the original "8647" post on Comey's Instagram account.



### Evidence located in Comey and Patrice's Google accounts

55. In my training and experience, evidence of who was using Google and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation; thus, enabling the United States to establish and prove each element, or, alternatively, to exclude the innocent from further suspicion.

56. For example, the stored communications and files connected to the Google accounts may provide direct evidence of the interstate communication of true threats. For example, such evidence may provide direct evidence of the identity of the author of the threating messages, the motives of the sender in sending the messages, the intent of the sender, the location from which the messages were sent, and the electronic devices or accounts used to send messages. Based on my training and experience, instant messages, voice messages, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate online threats. The information requested from Google may provide evidence of *mens rea*/criminal intent/ and/or knowledge of the criminal activity described herein.

57. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google, can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example,

PLA

007683

subscriber information, messaging logs, photos, videos (and data associated with the foregoing, such as date and time), may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation. Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity to include search history, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

58.     Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

59.     This search warrant application requests data from **SUBJECT ACCOUNT 1 and SUBJECT ACCOUNTS 2 from <u>May 14, 2025 to May 21, 2025</u>,**

P4

007684

for the purpose of identifying any evidence related to communications containing any threat to kidnap any person or any threat to injure the person of another and/or transmitting a threat in interstate commerce, and/or threats against the President, though photo data and/or search history; to identify any evidence that Comey deliberately deleted data to destroy evidence of his alleged criminal activity, to identify his knowledge of the meaning behind "86," and to identify any unenumerated evidence of the allegations described herein.

## VI: <u>LOCATION TO BE SEARCHED</u>

60.	Google has a headquarters office location at 1600 Amphitheatre Parkway, Mountain View, CA 94043, along with office locations around the world. The server computers that contain the information stored in Google accounts are in the possession, custody and control of Google.

## VII: <u>CONCLUSION</u>

61.	Your Affiant respectfully asserts that based on these facts, there is probable cause to believe that within the information associated with **SUBJECT ACCOUNT 1 AND SUBJECT ACCOUNTS 2**, located at the facilities in the possession, custody and control of Google, there are presently files either active or deleted, created, accessed, modified, uploaded, downloaded or otherwise related to **SUBJECT ACCOUNT 1 AND SUBJECT ACCOUNTS 2**, which constitute evidence of the violation of the Specified Federal Offenses.

62.	Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government

Page 38 of 39

P4

007685

will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

63.     Wherefore, your Affiant requests authority to search the account described in Attachment A in order to seize items described in Attachment B in accordance with Rule 41 of the Federal Rules of Criminal Procedure, pursuant to Title 18 U.S.C. § 2703.

64.     I declare under penalty of perjury that the foregoing information surrounding the request for a search warrant regarding **SUBJECT ACCOUNT 1** and **SUBJECT ACCOUNTS 2** is true and correct to the best of my knowledge.

April B. Floyd
Special Agent
Federal Bureau of Investigation

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this affidavit this 20th day of May 2026, via telephone at 3:59 pm.

BRIAN J. MEYERS
United States Magistrate Judge

Page 39 of 39

PLA

007686

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the Google accounts associated with ⟨Redacted⟩ ("SUBJECT ACCOUNT 1") and ⟨Redacted⟩ (SUBJECT ACCOUNTS 2), which is stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043.

Page 1 of 1

007687

## ATTACHMENT B

## Particular Things to be Seized

**I.      Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Google, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google is required to disclose the following information to the government for each account listed in Attachment A for the period of **May 14, 2025 to May 21, 2025,** unless otherwise specified:

a.     The contents of all emails associated with **SUBJECT ACCOUNT 1,** including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.     All records or other subscriber information, in any form kept, regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register **SUBJECT ACCOUNT 1 and SUBJECT ACCOUNTS 2,** login IP addresses associated with session times and dates, account status, alternative email addresses provided

Page 1 of 8

*PLA*

007688

during registration, methods of connecting, log files, subscriber change history, and means and source of payment (including any credit or bank account number), and detailed billing records;

c. All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history;

d. All records pertaining to devices associated with **SUBJECT ACCOUNT 1 AND SUBJECT ACCOUNTS 2** to include serial numbers, model type/number, IMEI, phone numbers, MAC Addresses, Android IDs and FCC ID numbers;

e. For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored; and

f. All records or other subscriber information as described in section I.b for any and all accounts linked by cookies, device ID (incl. Android IS (SSAID)), advertising IDs (incl. Android Advertising ID (AAID)), creation email address, recovery email address, creation IP address, forwarding/fetching email address, and telephone number(s) associated.

Page 2 of 5

P4A

007689

The Provider is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

Page 3 of 5

*P4A*

007690

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 875(c) (communication containing any threat to kidnap any person or any threat to injure the person of another and/or transmitting a threat in interstate commerce) and/or 18 U.S.C. § 871 (knowingly and willfully making threats to take the life of or inflict bodily harm upon the President of the United States) by James Brien Comey, the owner of **SUBJECT ACCOUNT 1** and Patrice Comey, the owner of **SUBJECT ACCOUNTS 2**, identified in Attachment A, in the form of the following:

a.) Communications between and/or regarding **SUBJECT ACCOUNT 1** and any other person or persons involved in the Specified Federal Offenses.

b.) Any evidence of Comey and/or Patrice researching "86", "47", "86 47", "8647", "eighty-six", "eight six", "eight-six", "86ed", "86-ed", "86ing", "86-ing", "eighty-sixing", and/or "eighty-sixed", or any variation thereof, including but not limited to, historical browser searches between May 14, 2025-May 21, 2025.

c.) Any evidence that would speak to Comey and/or Patrice's state of mind on or around May 15, 2025.

d.) Any notes or communications related to the search history between May 14, 2025-May 21, 2025, and the Instagram post made on May 15, 2025.

e.) Any records indicating how and when **SUBJECT ACCOUNT 1 and SUBJEACT ACCOUNTS 2** was accessed or used, to determine the

Page 4 of 5

P4

007691

geographic and chronological context of account access, use, and events relating to the Target Offenses;

f.) The identity of the user(s) of **SUBJECT ACCOUNT 1** and **SUBJECT ACCOUNTS 2**, including (but not limited to) names, the location of the user, passwords, login IP addresses, session times and durations, and communications with other internet accounts (whether email, domain, or any other) under the control of the user(s);

g.) All records and communications indicating the identity of the user, as well as the identity of the person(s) who communicated with the user of the account about matters relating to the crimes under investigation, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

Page 5 of 5

P4

007692

 ☑ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNTS<br>**Redacted**<br>THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 5:26-MJ-1775-BM |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Northern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated as if fully restated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B incorporated as if fully restated herein.

**YOU ARE COMMANDED** to execute this warrant on or before _____ June 9, 2026 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ any EDNC Magistrate Judge _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    May 20, 2026; 3:59 pm      _____
                                                           *Judge's signature*

City and state:    Raleigh, NC            _____ Brian S. Meyers, United States Magistrate Judge _____
                                                            *Printed name and title*

                                                                                       BSM

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

007694

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the Google accounts associated with **Redacted** ("**SUBJECT ACCOUNT 1**") and **Redacted** (**SUBJECT ACCOUNTS 2)**, which is stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), a company headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043.

Page 1 of 1

BSM P4A

Case 4:26-cr-00016-FL-RN     Document 40-2     Filed 07/28/26     Page 50 of 58

007695

## ATTACHMENT B

### Particular Things to be Seized

### I.    Information to be disclosed by Google (the "Provider")

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Google, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google is required to disclose the following information to the government for each account listed in Attachment A for the period of **May 14, 2025 to May 21, 2025,** unless otherwise specified:

    a.    The contents of all emails associated with **SUBJECT ACCOUNT 1**, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

    b.    All records or other subscriber information, in any form kept, regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register **SUBJECT ACCOUNT 1 and SUBJECT ACCOUNTS 2**, login IP addresses associated with session times and dates, account status, alternative email addresses provided

Page 1 of ~~8~~ 5

BSM   PLA

during registration, methods of connecting, log files, subscriber change history, and means and source of payment (including any credit or bank account number), and detailed billing records;

c.  All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history;

d.  All records pertaining to devices associated with **SUBJECT ACCOUNT 1 AND SUBJECT ACCOUNTS 2** to include serial numbers, model type/number, IMEI, phone numbers, MAC Addresses, Android IDs and FCC ID numbers;

e.  For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored; and

f.  All records or other subscriber information as described in section I.b for any and all accounts linked by cookies, device ID (incl. Android IS (SSAID)), advertising IDs (incl. Android Advertising ID (AAID)), creation email address, recovery email address, creation IP address, forwarding/fetching email address, and telephone number(s) associated.

Page 2 of 5

BSM P4

007697

The Provider is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

Page 3 of 5

P4A

007698

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 875(c) (communication containing any threat to kidnap any person or any threat to injure the person of another and/or transmitting a threat in interstate commerce) and/or 18 U.S.C. § 871 (knowingly and willfully making threats to take the life of or inflict bodily harm upon the President of the United States) by James Brien Comey, the owner of **SUBJECT ACCOUNT 1** and Patrice Comey, the owner of **SUBJECT ACCOUNTS 2**, identified in Attachment A, in the form of the following:

a.) Communications between and/or regarding **SUBJECT ACCOUNT 1** and any other person or persons involved in the Specified Federal Offenses.

b.) Any evidence of Comey and/or Patrice researching "86", "47", "86 47", "8647", "eighty-six", "eight six", "eight-six", "86ed", "86-ed", "86ing", "86-ing", "eighty-sixing", and/or "eighty-sixed", or any variation thereof, including but not limited to, historical browser searches between May 14, 2025-May 21, 2025.

c.) Any evidence that would speak to Comey and/or Patrice's state of mind on or around May 15, 2025.

d.) Any notes or communications related to the search history between May 14, 2025-May 21, 2025, and the Instagram post made on May 15, 2025.

e.) Any records indicating how and when **SUBJECT ACCOUNT 1 and SUBJEACT ACCOUNTS 2** was accessed or used, to determine the

Page 4 of 5

P4

007699

geographic and chronological context of account access, use, and events relating to the Target Offenses;

f.) The identity of the user(s) of **SUBJECT ACCOUNT 1** and **SUBJECT ACCOUNTS 2**, including (but not limited to) names, the location of the user, passwords, login IP addresses, session times and durations, and communications with other internet accounts (whether email, domain, or any other) under the control of the user(s);

g.) All records and communications indicating the identity of the user, as well as the identity of the person(s) who communicated with the user of the account about matters relating to the crimes under investigation, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

Page 5 of 5

PLA

007700

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNTS **Redacted** THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | Case No. 5:26- MJ- 1775-BM <br><br> **Filed Under Seal** |

## MOTION TO SEAL SEARCH WARRANT
## AND SUPPORTING DOCUMENTATION

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, moves this Honorable Court for an Order to Seal the above-captioned matter.

The documents contain information regarding an ongoing investigation of an alleged violations of 18 U.S.C. § 875(c), which prohibits communication containing any threat to kidnap any person or any threat to injure the person of another/transmitting a threat in interstate commerce and 18 U.S.C. § 871 which prohibits knowingly and willfully making threats to take the life of or inflict bodily harm upon the President of the United States. The United States of America believes that to reveal the existence of the application, the search warrant, and the corresponding affidavit in the above-captioned matter at this time could result in adverse effects, including endangering the life and physical safety of an individual, and destruction of or tampering with evidence; as a result, the ongoing investigation could be jeopardized.

WHEREFORE, the United States of America respectfully prays for the sealing of

007701

the above-captioned matter until such time as unsealing is requested by the United States Attorney and ordered by the court. The undersigned Assistant United States Attorney further requests that the Court direct the Clerk provide the United States with a copy of the affidavit, application for a search warrant, search warrant, and return of service, as well as a copy of the Motion and Order to Seal the same, which may then provide copies of such to the Federal Bureau of Investigation.

Dated this the __20th__ day of __May__, 2026.

W. ELLIS BOYLE
United States Attorney


PHILIP L. AUBART
Assistant United States Attorney
Criminal Division
150 Fayetteville Street, Suite 2100
Raleigh, NC 27501
Telephone: ███████████
Email: ███████████
MN State Bar No. 0396204

2

007702

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

IN THE MATTER OF THE SEARCH
OF INFORMATION ASSOCIATED
WITH THE GOOGLE ACCOUNTS

**Redacted**

THAT IS STORED AT PREMISES
CONTROLLED BY GOOGLE LLC

Case No. 5:26-mJ-1775-BM

**Filed Under Seal**

## ORDER TO SEAL SEARCH WARRANT
## AND SUPPORTING DOCUMENTATION

Upon motion of the United States it is hereby ORDERED, for good cause shown

based on the facts and reasons stated in the motion, that the above-captioned matter be

sealed until such time as unsealing is requested by the United States Attorney and

granted by the court.

It is FURTHER ORDERED that the Clerk provide the United States with a copy

of the affidavit, application for a search warrant, search warrant, and return of service,

as well as a copy of the Motion and Order to Seal the same, which may then provide

copies of such to the Federal Bureau of Investigation.

This the 20th day of May , 2026.

HON. BRIAN S. MEYERS
United States Magistrate Judge