IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

United States of America,          )
           )
      v.          )     Case No. 4:26-CR-00016-FL-RN
           )
James B. Comey, Jr.,          )
           )
      Defendant.        )
           )

**DECLARATION OF DAVID N. KELLEY IN SUPPORT OF
MOTION TO SUPPRESS AND FOR *FRANKS* HEARING**

I, David N. Kelley, pursuant to 28 U.S.C. § 1746, declare as follows:

1. My name is David N. Kelley. I am over the age of eighteen (18) years and am fully competent to make this declaration. The facts stated herein are based upon my personal knowledge.

2. I am an attorney and have represented Mr. Comey in connection with this matter.

3. I have been an attorney since 1986, and I am admitted to practice in Connecticut, New York, and several federal courts throughout the country, including the United States Court of Appeals for the Fourth Circuit. I attended New York Law School, where I was an editor of the Law Review. I received my undergraduate degree from the College of William and Mary in 1981. Following law school, I clerked for the late T.F. Gilroy Daly, the then Chief United States District Judge for the District of Connecticut. Following my Law Clerk tenure in 1988, I joined the United States Attorney's Office for the Southern District of New York as an Assistant United States Attorney ("AUSA"), where I served in a variety of capacities until 2005. As an AUSA, I served as the Deputy Chief of Violent Gangs, Chief of Organized Crime and Terrorism, and as Deputy United States Attorney when Mr. Comey served as United States Attorney. After Mr. Comey was

appointed as Deputy Attorney General, I served as United States Attorney between 2003 and 2005. On September 11, 2001, I was appointed by the Attorney General of the United States to Chair the Department of Justice's investigations into the 9/11 attacks. Since 2005, I have been an attorney in private practice and am currently a partner at O'Melveny & Myers LLP in New York, New York.

<u>The May 16, 2025 Secret Service Interview</u>

4. I have represented Mr. Comey in a variety of matters relating to the termination of his service as FBI Director since 2017. I also represented Mr. Comey during his May 16, 2025, interview by the Secret Service. I participated in the interview by telephone from New York and a large number of law enforcement officials participated in person. The interview was attended by the General Counsel for the Department of Homeland Security, the General Counsel for the U.S. Secret Service, the Deputy Chief Counsel for the U.S. Secret Service, an Assistant United States Attorney from the Eastern District of Virginia, an Assistant Special Agent in Charge from the Secret Service and a Secret Service Special Agent. One of the senior officials personally communicated to me his embarrassment at the amount of attention being paid to the matter.

5. Mr. Comey answered all the questions he was asked. I did not stop the interview at any time.

6. On May 23, 2025, I was asked by a Secret Service agent to provide the Secret Service with the photograph Mr. Comey took of the seashells as well as screen shots of other items and a release form for confidential medical and mental health records that would allow the Secret Service access to any medical records of Mr. Comey, including for any psychiatric treatments (of which there were none). Within a matter of hours of the request, I contacted Mr. Comey in Virginia, who sent me the requested materials. Because I was in New York, I sent by email all of

the requested items, including the photograph of the seashells, relevant texts on Mr. Comey's phone, and the medical release form to the Secret Service agent in Washington, D.C.[1]

7. Among the messages I provided to the Secret Service agent was a screenshot sent by Patrice Comey to Mr. Comey at 3:12 p.m. on May 15, 2025. That screenshot depicts a Google search showing that "86" is "slang" that means "to get rid of or to refuse service."

8. In the communications I had with the Secret Service agent, the agent did *not* specify that the Secret Service wanted the *original* photograph, and the Secret Service official confirmed that email transmission was acceptable. I specifically recall asking if it was okay to send the items by email and was told that it was. I never heard any concerns from the Secret Service regarding the voluntary production that was made. Nor to this day have I ever been asked about the production by the FBI.

9. For the avoidance of doubt, at no time did I attempt to "hide" metadata in this case. First, I take very seriously my duties both as a citizen and an officer of the Court. I would never obstruct justice. In addition, I had no reason to think that there would be anything inconsistent between the metadata of the relevant photograph and Mr. Comey's account of the facts.

10. Indeed, I understand that the metadata of the "original" photograph, which was obtained as a result of the March search warrant, establishes that the photograph was taken on Emerald Isle, North Carolina, the afternoon of May 15, 2025, at 1:56 pm—corroborating Mr. Comey's account and refuting the notion that either I or Mr. Comey had any reason to seek to "hide metadata associated with original images" as the case agent insinuated in the March application.

---

[1] The request was sent to me at 9:53 a.m. and I responded with the attachments that same day at 2:29 pm.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 28, 2026.

David N. Kelley