IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Case No.: 4:26-CR-00016-FL-RN |
| | ) | |
| James B. Comey, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**JAMES B. COMEY JR.'S REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT FOR VINDICTIVE AND SELECTIVE PROSECUTION**

## TABLE OF CONTENTS


**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 2

I. PRESIDENT TRUMP'S PERSONAL ANIMUS TOWARD MR. COMEY CAUSED THIS VINDICTIVE PROSECUTION ................................ 2

A. President Trump's Vindictive Motive Can And Should Be Imputed To The Prosecutor Who Secured The Indictment..................................... 3

B. Overwhelming Evidence Establishes The President's Vindictive Motive ........................................................................................ 8

C. The Record Establishes That Mr. Comey Would Not Have Been Prosecuted But For The President's Animus .......................................... 11

D. At A Minimum, Objective Evidence Establishes A Presumption Of Vindictiveness, Meriting An Evidentiary Hearing ................................. 13

II. THE GOVERNMENT SELECTIVELY PROSECUTED MR. COMEY BECAUSE THE PRESIDENT PERCEIVES HIM AS A POLITICAL ADVERSARY ........................................................................................ 17

A. The Evidence Shows Direct Admissions Of Animus ............................. 17

B. The Evidence Shows Discriminatory Effect And Discriminatory Purpose........................................................................................ 18

CONCLUSION ......................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Barbour v. Garland*,
105 F.4th 579 (4th Cir. 2024) ....................................................................................9

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833 (1998)....................................................................................................8

*Trump v. United States*,
603 U.S. 593 (2024)....................................................................................................7

*United States v. Abrego Garcia*,
802 F. Supp. 3d 1055 (M.D. Tenn. 2025)...................................................... *passim*

*United States v. Abrego Garcia*,
807 F. Supp. 3d 827 (M.D. Tenn. 2025)....................................................................7

*United States v. Abrego Garcia*,
833 F. Supp. 3d 811 (M.D. Tenn. 2026).................................................................6, 7

*United States v. Adams*,
870 F.2d 1140 (6th Cir. 1989) .......................................................................... *passim*

*United States v. Andrews*,
633 F.2d 449 (6th Cir. 1980) .......................................................................................7

*United States v. Armstrong*,
517 U.S. 456 (1996)..............................................................................................2, 18

*United States v. Ball*,
18 F.4th 445 (4th Cir. 2021) ..................................................................................11, 14

*United States v. Carey*,
816 F. Supp. 3d 129 (D.D.C. 2026)........................................................................11, 14

*United States v. Gallegos-Curiel*,
681 F.2d 1164 (9th Cir. 1982) .....................................................................................11

*United States v. Goodwin*,
457 U.S. 368 (1982)..........................................................................................2, 11, 15

*United States v. Hastings*,
126 F.3d 310 (4th Cir. 1997) .........................................................................................4

*United States v. James*,
810 F. Supp. 3d 752 (E.D. Va. 2025) ...........................................................................17

## TABLE OF AUTHORITIES
**(continued)**

**Page(s)**


*United States v. Koh*,
199 F.3d 632 (2d Cir. 1999)....11

*United States v. LaDeau*,
734 F.3d 561 (6th Cir. 2013)....7

*United States v. Meyer*,
810 F.2d 1242 (D.C. Cir. 1987)....3, 14, 16

*United States v. Monsoor*,
77 F.3d 1031 (7th Cir. 1996)....3, 11

*United States v. Olvis*,
97 F.3d 739 (4th Cir. 1996)....20

*United States v. P.H.E., Inc.*,
965 F.2d 848 (10th Cir. 1992)....3, 7, 11, 15

*United States v. Raymer*,
941 F.2d 1031 (10th Cir. 1991)....14

*United States v. S. Poverty L. Ctr.*,
2026 WL 2280675 (M.D. Ala. Aug. 7, 2026)....3, 10, 14

*United States v. Sanders*,
211 F.3d 711 (2d Cir. 2000)....3

*United States v. Trump*,
2024 WL 3638344 (D.D.C. Aug. 3, 2024)....5

*United States v. Villa*,
70 F.4th 704 (4th Cir. 2023)....11, 15

*United States v. White*,
670 F.3d 498 (4th Cir. 2012)....19

*United States v. Wilson*,
120 F. Supp. 2d 550 (E.D.N.C. 2000)....4

*United States v. Wilson*,
262 F.3d 305 (4th Cir. 2001).... *passim*

*United States v. Zakhari*,
85 F.4th 367 (6th Cir. 2023)....13

## TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Rules**

Fed. R. Crim. P. 12(b)(3) .....14

**Other Authorities**

Alanna D. Richer, *In AP Interview, Todd Blanche Defends His Record as Political Pressure Mounts* (Aug. 28, 2026) .....5

Am. Heritage Dictionary .....20

*Grand Juries Weighing Criminal Charges for Tish James, Adam Schiff: Sources*, N.Y. Post (Aug. 8, 2025) .....17

Jack Goldsmith, *The Unitary Executive and Comey's Vindictive Prosecution Claim*, Exec. Functions (Aug. 28, 2026) .....4

Marc Fisher, et al., *Pizzagate: From Rumor, to Hashtag, to Gunfire in D.C.*, Denver Post (Dec. 6, 2016) .....19

U.S. Att'y's Off., E.D.N.C., *Raleigh Man Sentenced to Federal Prison for Threatening to Kill POTUS and U.S. Secret Service Agent* (Dec. 8, 2025) .....20

Wayne R. LaFave et al., Criminal Procedure § 13.5(a) .....14, 15

## INTRODUCTION

The government's opposition scarcely disputes the extraordinary record in this case: The seashells-post indictment caps a multiyear, multiprong campaign led by the President to punish a private citizen based on personal animus, and in retaliation for protected speech. In response to Mr. Comey's public criticisms of the President on core political issues, the President has retaliated with a series of invective-laced personal attacks against Mr. Comey. He has also demanded Mr. Comey be prosecuted for surmised offenses, based on a shifting set of conclusory accusations devoid of any factual basis. The President's demands do not rest on evidence or investigation. Rather, they reveal a pure desire to punish a perceived political adversary. This case expresses that animus: it arose after the President's prior attempt at retaliation collapsed when the district court for the Eastern District of Virginia dismissed an indictment because it was obtained by the President's personally selected and unlawfully appointed prosecutor. Thereafter, the then-Acting Attorney General and prosecutors revived a moribund investigation into a political social-media post—which the Secret Service and DOJ leadership had previously determined to be a prosecutorial dead end. The resulting indictment violates the Due Process Clause, the First Amendment, and the Equal Protection Clause. The Court should dismiss with prejudice.

The government's defense of the indictment rests on a series of flawed legal premises that, when combined, would categorically bar any defendant from ever challenging a President's open direction of vindictive prosecutions of political opponents. The government asserts, for example, that the Fourth Circuit has held that a superior's animus may not be imputed to the charging prosecutor (it has not); that Mr. Comey's prior public service stripped him of his First Amendment right to criticize the President as a private citizen (it did not); that Mr. Comey must prove this prosecution was "solely" motivated by animus (he need not); and that Fourth Circuit precedent

precludes application of a presumption of vindictiveness in the pretrial context (it does not). The government fares no better in relying on the affidavit from U.S. Attorney Boyle, which is precisely the type of subjective assertion of good faith that courts have repeatedly held legally inadequate. Nor do the affidavit's assurances overcome the well-documented chain of presidential animus and retribution—including the President's demands for updates from the Secret Service, the catalogue of the President's vitriol, and extensive corroborative reporting about this case's origins.

This record amply meets the Fourth Circuit's test for an unconstitutional vindictive prosecution: "genuine animus" that is the "but for" cause of an indictment. *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001). And the same record and the existence of similarly situated individuals not prosecuted establishes an unconstitutional selective prosecution. Thus, the current record justifies dismissal. But at the very least, discovery and a hearing are warranted based on the "reasonable likelihood of vindictiveness," *United States v. Goodwin*, 457 U.S. 368, 373 (1982), and the existence of "some evidence tending to show the existence of the essential elements of" impermissible selection, *United States v. Armstrong*, 517 U.S. 456, 468 (1996).

## ARGUMENT

### I. PRESIDENT TRUMP'S PERSONAL ANIMUS TOWARD MR. COMEY CAUSED THIS VINDICTIVE PROSECUTION

For the second time in less than a year, the government has indicted Mr. Comey—not because law enforcement agents have conducted a good-faith investigation and determined that Mr. Comey committed a crime, but rather to effectuate President Trump's desire to punish Mr. Comey based on who he is and what he has said. A voluminous record of public statements demonstrates President Trump's animus toward Mr. Comey, and discovery and corroborative reporting establish a causal link between that animus and this prosecution. These facts provide "objective evidence" supporting dismissal based on vindictive prosecution. *Wilson*, 262 F.3d at

314-15. At minimum, they establish presumptive vindictiveness warranting an evidentiary hearing. The government's contrary arguments lack merit.

### A. President Trump's Vindictive Motive Can And Should Be Imputed To The Prosecutor Who Secured The Indictment

1. The government argues (at 12-13) that the Court may examine only Mr. Boyle's personal motives as the "charging prosecutor." But it is well established that a defendant may demonstrate that "the prosecutor acted with genuine animus toward the defendant," *Wilson*, 262 F.3d at 314, by showing either that the prosecutor himself "harbored genuine animus toward the defendant" or that the prosecutor "was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse.'" *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000); *see United States v. Monsoor*, 77 F.3d 1031, 1035 (7th Cir. 1996); *United States v. P.H.E., Inc.*, 965 F.2d 848, 858-60 (10th Cir. 1992); *United States v. Adams*, 870 F.2d 1140, 1145-46 (6th Cir. 1989). District courts have thus recently recognized that the animus of current DOJ officials can be imputed to federal prosecutors. *See United States v. Abrego Garcia*, 802 F. Supp. 3d 1055, 1063-64 (M.D. Tenn. 2025) ("Even assuming the individual motive of Acting U.S. Attorney McGuire was pure, others' motives, like fruit from a poisonous tree, may taint this prosecution."), *appeal pending*, No. 26-5555 (6th Cir. docketed June 24, 2026); *United States v. S. Poverty L. Ctr.* ("*SPLC*"), 2026 WL 2280675, at *10 (M.D. Ala. Aug. 7, 2026) ("[B]ecause prosecutors do not operate in a vacuum, the Court can consider whether the prosecutor was prevailed upon to bring the charges by another.") (internal quotation marks omitted).

The government's exclusive focus on the U.S. Attorney's motivations conflicts with "[t]he Supreme Court's decisions concerning vindictive prosecution," which consider "the conduct of the government as a whole," not just "the conduct or retributive sentiments of a single prosecutor." *United States v. Meyer*, 810 F.2d 1242, 1248 (D.C. Cir. 1987). And the government's proposed

rule would mean that a supervising official could achieve a vindictive prosecution by laundering his animus through subordinates—a roadmap for evasion of elemental due process principles. Such a rule is particularly problematic given the government's assertion (at 9) that the President may "direct[] his subordinates" at DOJ to prosecute individuals as an "exercise [of] core Executive functions." The government "cannot have it both ways" by at once asserting "extreme unitariness" and rejecting DOJ's traditional independence while insisting DOJ prosecutors act "uninfluenced by the president's vindictive commands." Jack Goldsmith, *The Unitary Executive and Comey's Vindictive Prosecution Claim*, Exec. Functions (Aug. 28, 2026), https://perma.cc/E6S3-MDM4. If accepted, the government's position would immunize vindictive prosecutions that flow from the President through subordinates who have been tasked with carrying out his bidding.

The government admits (at 14) that other circuits have recognized the stalking-horse theory of vindictiveness upon which Mr. Comey relies. But it erroneously asserts that the Fourth Circuit has "declined to go down that path." *Id.* In fact, nothing in Fourth Circuit precedent forecloses the stalking-horse theory. In *Wilson*, the court took no issue with the district court's recognition that a prosecutor "could be considered a 'stalking horse,'" *United States v. Wilson*, 120 F. Supp. 2d 550, 555 (E.D.N.C. 2000)—instead, it held only that such a showing had not been made "on this record," 262 F.3d at 320.[1] And in *United States v. Hastings*, 126 F.3d 310 (4th Cir. 1997), the court merely concluded that, on the facts there, the alleged political animus of IRS investigators could not be imputed to the prosecutors who brought the case. *See id.* at 314. If the Fourth Circuit had categorically rejected the stalking-horse theory, that analysis would have been unnecessary.

[1] In opposing certiorari in *Wilson*, the government itself recognized that the Fourth Circuit "did not adopt the broad holding" that one prosecutor's motives may not be imputed to another. Br. for the U.S. in Opp. at *9-12, *Wilson v. United States*, No. 01-954 (U.S. Apr. 3, 2002), 2002 WL 32135588 (harmonizing *Wilson* with *Monsoor*, *Adams*, and *P.H.E.*).

Here, the objective evidence shows that President Trump, through high-ranking DOJ officials, "prevailed upon the prosecutors in this case." Opp. 14. The government disregards the President's prior public directive that DOJ prosecute Mr. Comey because he was supposedly "guilty as hell" of unspecified crimes. Mot. 12. It likewise ignores documented evidence of President Trump's and DOJ officials' direct involvement in the investigation of Mr. Comey's seashells post. Mot. 8-10. Beyond calling it "conjecture," Opp. 16, the government does not rebut reports of Mr. Blanche's promise in April 2026 to "move more efficiently . . . against Mr. Trump's targets" and "revive" the efforts to prosecute Mr. Comey in the wake of the dismissal of the Eastern District of Virginia indictment—a plan carried out that month when his "aides instruct[ed] [Mr.] Boyle to seek a grand jury indictment of Comey." Mot. 15-16.[2]

That objective evidence of a prosecution that springs from the President distinguishes this case from *United States v. Trump*, 2024 WL 3638344 (D.D.C. Aug. 3, 2024), upon which the government heavily relies (Opp. 16, 17, 23, 24). There, prosecutors took a textbook "bottom-up" approach toward investigating former-President Trump, with "no indication" that President Biden "ever expressed" his private feelings "to the Attorney General or the Justice Department." *Id.* at *4. Here, by contrast, the President—who has supervisory authority over all federal prosecutors, has openly declared that he exercises it, and appointed an Attorney General who welcomes presidential direction—has repeatedly and publicly expressed his animus toward Mr. Comey.[3]

---

[2] The government responds only to the email from the prosecutor who opened this case, stating that he had been "ordered" to do so. Opp. 15. The government's unsupported claim that the prosecutor was merely explaining to a federal agent that he was the case's point-of-contact is illogical: The prosecutor had admittedly just spoken to the agent on the phone before sending the email. Dkt. 43 ¶ 15 & 43-1 at 5 ("good talking with you on the phone"). Nor does the government's characterization refute the inference that the source of the order was Main Justice.

[3] Attorney General Blanche recently stated, "I don't think [it's] actually true" that "attorneys general" are "independent" of the president. Alanna D. Richer, *In AP Interview, Todd Blanche*

2. Against this objective evidence of animus, the government relies on an affidavit by U.S. Attorney Boyle, asserting that he alone "made the decision to pursue the investigation and seek an indictment." Opp. 14. But his affidavit does not refute the causal chain from the President's animus to this prosecution. Mr. Boyle did not decide to "pursue the investigation," which commenced months before he joined the U.S. Attorney's Office. *Id.* And Mr. Boyle's insistence (at Dkt. 53-1 ¶ 15, 19) that he did not communicate "with Attorney General Pam Bondi or then-Acting Attorney General Todd Blanche" until the day before seeking the indictment does not deny credible reporting that "Blanche's aides" prevailed upon Mr. Boyle to effectuate the President's wishes. Mot. 16. That reporting is consistent with this Administration's pattern of high-level DOJ officials directing prosecutions of President Trump's political adversaries. *See United States v. Abrego Garcia*, 833 F. Supp. 3d 811, 830 (M.D. Tenn. 2026) (finding that Mr. Blanche prevailed on prosecutors through "chain of command").

Moreover, Mr. Boyle's affidavit underscores that something irregular appears to have happened in April 2026, after Mr. Blanche became the Acting Attorney General. Mr. Boyle avers that: "Leading up to the decision to present the evidence to the grand jury, the prosecution team reviewed all evidence collected up to that point." Dkt. 53-1 ¶ 11; *see* Opp. 24. But the discovery record shows that while the government had collected Mr. Comey's Apple iCloud account, it proceeded to indict before it had the opportunity to review the materials collected. *See* Suppl. Aff. of Patrick J. Fitzgerald, filed concurrently under seal.

More broadly, Mr. Boyle declares that the entire "prosecution team did not act with animus nor was it in any way motivated by animus." Dkt. 53-1 ¶ 12. But such sweeping statements of

---

*Defends His Record as Political Pressure Mounts* (Aug. 28, 2026), https://perma.cc/6MZ7-WCU8.

subjective belief are legally insufficient to overcome a "realistic likelihood of vindictiveness." *United States v. Andrews*, 633 F.2d 449, 456 (6th Cir. 1980) (en banc). "[O]nly objective, on-the-record explanations" by a prosecutor "can suffice." *Id.* And affidavits positing "subjective rationales" and statements of good faith are not "sufficiently 'objective' explanations." *United States v. LaDeau*, 734 F.3d 561, 572 (6th Cir. 2013) (rejecting government affidavit offering post hoc rationales for charging decision). In any case, as already explained, the question here is whether the President harbored animus and then prevailed upon his subordinates to prosecute Mr. Comey—not whether Mr. Boyle and his team were motivated by animus themselves.

Accordingly, Mr. Boyle's blanket assurance (at Dkt. 53-1 ¶ 13) that he "did not feel pressured, coerced, or motivated" to indict Mr. Comey does not advance the government's position. *See Abrego-Garcia*, 833 F. Supp. 3d at 834-35 (declining to credit such "good faith explanations" from Acting U.S. Attorney, that he "made the decision on whether to seek an indictment" and "received no direction from anyone at the White House" or DOJ).[4] Such a subjective assessment also cannot be relevant where, as here, the animus belongs to the President—who has wielded his "exclusive authority over the investigative and prosecutorial functions of the Justice Department," *Trump v. United States*, 603 U.S. 593, 621 (2024), including by forcing the resignation of a U.S. Attorney who refused to indict Mr. Comey, Mot. 12. *Cf. P.H.E.*, 965 F.2d at 859-60 (court must dismiss a vindictive "a prosecution [that] is premised on the fruits of constitutionally tainted behavior, . . . notwithstanding attempts to launder the taint by presenting the fruits to an independent prosecutor" asserting good faith). After all, "cases do not magically appear on the desks of prosecutors," and this case is no exception. *United States v.*

[4] The underlying affidavit is at 3:25-cr-115 (M.D. Tenn. Oct. 22, 2025), Dkt. 178-1.

*Abrego Garcia*, 807 F. Supp. 3d 827, 830 (M.D. Tenn. 2025) (ordering government to produce discovery).

**B. Overwhelming Evidence Establishes The President's Vindictive Motive**

In mine-run vindictive prosecution cases, defendants ask courts to infer animus from stray statements or coincidences of timing. Here, no guesswork is necessary. The President has vented his fury in dozens of public attacks on Mr. Comey's character—calling him "very sick or very dumb," "filth," a "weasel," and a "piece of garbage." Mot. 5-7. In turn, the President has accompanied those attacks with fervent commands to prosecute Mr. Comey, including his September 2025 post instructing that "JUSTICE MUST BE SERVED, NOW!!!," which preceded the Eastern District of Virginia indictment. *Id.* at 12. Viewed as a whole, these statements and actions are "direct evidence" of "vindictive motive." No reader of those statements can doubt that the President harbors "genuine animus toward" Mr. Comey. *Wilson*, 262 F.3d at 314.

The government incorrectly asserts (at 17) that Mr. Comey must show that he was prosecuted "for exercising a legal right or legally protected conduct." As the Motion explains (at 21), the Due Process Clause prohibits vindictive prosecutions motivated by the government's "genuine animus toward the defendant," regardless of whether it is tied to the defendant's exercise of constitutional rights. *Wilson*, 262 F.3d at 314. The government does not even attempt to explain how an "arbitrary" prosecution employed "as an instrument of oppression" complies with the Due Process Clause. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (citation omitted).

In any event, this prosecution is also designed to retaliate against Mr. Comey for his exercise of a "legal right," Opp. 17—namely, his right to publicly criticize the President and his policies. The government asserts that any retaliation is based only on Mr. Comey's conduct "as a government official." *Id.* But every relevant statement by Mr. Comey came after he left

government in May 2017. *See* Dkt. 36-1. And President Trump's motive to punish Mr. Comey for his speech as a private citizen is apparent from the President's pattern of responses to that speech. Begin with the President's reaction to Mr. Comey's memoir *A Higher Loyalty*, which described his time as FBI Director and criticized the President as "unethical" and "untethered to truth." Mot. 4. After the memoir was published, President Trump publicly branded Mr. Comey "a proven LEAKER & LIAR" who purportedly disclosed "CLASSIFIED information, for which he should be prosecuted." Dkt. 36-1 at 6. When Mr. Comey continued to promote *A Higher Loyalty* and criticize the President as a "forest fire" to democracy, the President accused Mr. Comey of both trying to "make lots of money from a third rate book (that should never have been written)" and "illegally leak[ing] CLASSIFIED INFORMATION." *Id.* at 8-9; Mot. 5. Behind the scenes, President Trump reportedly explored using the FBI, DOJ, and IRS to investigate Mr. Comey for "writing negatively about" him. Mot. 5-6.

The pattern continued for years, escalating each time Mr. Comey spoke out. After Mr. Comey criticized his appearance with Vladimir Putin, the President called him "Disgraceful," a "clown[]" and a "loser[]." Dkt. 36-1 at 13-14. When Mr. Comey decried the revocation of John Brennan's security clearance, President Trump called on Special Counsel Robert Mueller to "look in" Mr. Comey's "direction." *Id.* at 14-15. When Mr. Comey criticized the President's "Trump-style justice," the President retweeted attacks that Mr. Comey should "be in jail." Mot. 6-7. After Mr. Comey publicly warned that a second Trump term would have "serious" implications for the DOJ and FBI, then-candidate Trump called him a corrupt liar who had perpetrated "[h]orrors." *Id.*

In sum, almost every time that Mr. Comey has entered the public square to criticize the President, the President has responded with insults and calls for prosecution—an unprecedented expression of vindictive motive. *See Barbour v. Garland*, 105 F.4th 579, 591 (4th Cir. 2024)

(explaining that close "temporal proximity" between a "protected activity" and an "adverse action" can establish "retaliatory animus"). The government's claim (at 17) that the President's expressions of animus and prosecutorial intent "relate back to [Mr. Comey's] official duties" overlooks that each call to prosecute Mr. Comey followed his speech as a private citizen. Nor is it a defense that the President's statements do not "remotely relate to the instant prosecution," Opp. 18; vindictive prosecutions are often pretextual responses to unrelated expressive activity. *E.g.*, *Adams*, 870 F.2d at 1141 (finding federal tax fraud charges vindictive when brought in retaliation for defendant's discrimination complaint). Regardless, the government ignores the President's demand that prosecutors here show no "leniency" because Mr. Comey is a "dirty cop." Mot. 9. And contrary to the government's assertion (at 18) that President's Trump's "[p]ost-indictment statements . . . do not show animus," the President explained shortly after the indictment: "I was hunted by some very bad people, but now I'm the hunter." Dkt. 36-1 at 70-71.

Finally, recognizing Mr. Comey's vindictive prosecution claim here would not suggest that defendants can "effectively immunize [themselves] from prosecution simply by engaging in protected speech." Opp. 19 (quoting *SPLC*, 2026 WL 2280675, at *10). A claim of vindictiveness can succeed "only where the defendant can show that his prosecution was brought to punish him *for his speech*." *SPLC*, 2026 WL 2280675, at *8. SPLC fell short because according to the court there, SPLC had not connected its "extensive[] critici[sms] [of] the Trump administration" and the indictment in that case. *Id.* at *10. But SPLC had available only "statements made by President Trump before the indictment was unsealed that are unrelated to the SPLC" and "post-indictment statements about the SPLC." *Id.* at *13. Here, Mr. Comey has offered voluminous evidence of the President's statements—dating back to 2017—"evinc[ing] animus" toward Mr. Comey's speech, which can in turn be imputed to the prosecutors who brought this case. *Id.*

### C. The Record Establishes That Mr. Comey Would Not Have Been Prosecuted But For The President's Animus

Objective evidence shows that the prosecution against Mr. Comey would not have been brought "but for" the President's "animus." *Wilson*, 262 F.3d at 314. The government's argument against causation is legally and factually wrong.

The government repeatedly insists (Opp. 1, 10, 11, 17, 25) that, for Mr. Comey's argument to succeed, the prosecution must have been brought "solely" to punish Mr. Comey for exercising his First Amendment rights, contrasting a "sole cause" with a "but-for" cause. That argument relies exclusively on the use of the word "solely" in two footnotes in *Goodwin*, 457 U.S. at 379-80 nn.11 & 12, which the Fourth Circuit has repeatedly interpreted to require "but-for" causation. *Wilson*, 262 F.3d at 314; *see also United States v. Ball*, 18 F.4th 445, 454 (4th Cir. 2021); *United States v. Villa*, 70 F.4th 704, 710 (4th Cir. 2023). Other circuits have also "settled into a consensus" on the but-for standard. *See United States v. Carey*, 816 F. Supp. 3d 129, 142 (D.D.C. 2026) (citing cases).[5] Indeed, a "sole causation" standard "would make little sense" given that the Supreme Court has found a likelihood of vindictive prosecution even when the defendant pleaded guilty to committing the charged crime. *Id.* at 142 (citing *Blackledge v. Perry*, 417 U.S. 21 (1974)).

The record here establishes that the government would not have brought this prosecution but for President Trump's animus. The but-for causation standard is a "pragmatic" one, "directed to determining how the decision to prosecute was actually made" without permitting "vindictiveness to be hidden behind procedural cosmetics." *P.H.E.*, 965 F.2d at 858. Here, the government would not have prosecuted Mr. Comey for his seashells post absent the President's

---

[5] *See United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999); *Adams*, 870 F.2d at 1145 (6th Cir.); *United States v. Monsoor*, 77 F.3d 1031, 1034 (7th Cir. 1996); *P.H.E.*, 965 F.2d at 858 (10th Cir.); *see also United States v. Gallegos-Curiel*, 681 F.2d 1164, 1169 (9th Cir. 1982).

intervention and Mr. Blanche's efforts to channel the President's animus into action. The government does not dispute that, immediately following the post, the Secret Service believed that warrantless electronic surveillance of Mr. Comey was "legally" a "bad idea," because there was no "imminent danger to life." Mot. 9. The Secret Service then decided against opening a full investigation, Mot. 10, while FBI Director Patel diminished Mr. Comey's post as a "beachside venture" and "political stand." *Id*. In the ensuing months before the indictment, the government's desultory investigation yielded only *exculpatory* evidence, including that "86" was not present in the FBI's Sentinel database or organized-crime trial files. Dkt. 43 ¶¶ 22-26. Nor does the government refute well-sourced reporting that Attorney General Bondi and then-Deputy Attorney General Blanche each thought this prosecution was of dubious merit—until President Trump asked Mr. Blanche to "audition" for the role of Attorney General. *See* Mot. 15-16.

Moreover, the numerous procedural irregularities in the investigations—including the investigation's sudden acceleration after months of languishing—show a clear causal link between President Trump's animus and Mr. Comey's indictment. The government ignores these irregularities. Nor does the government address: (1) President Trump's direct involvement in the investigation from day one, including demands that the Secret Service send updates to the President as he traveled on Air Force One, *see* Dkt. 43 ¶ 8; (2) the Secret Service's change of policy in the immediate aftermath of Mr. Comey's post to deem "86 47" a threat, which it soon retracted due to the flood of responsive hits, *id.* ¶¶ 35-36; and (3) the FBI's continuation of the investigation even after the Secret Service categorized the case as "non-referred," *id.* ¶ 34.[6]

[6] Although the FBI may take over an investigation from another federal agency, *see* Opp. 25, the government offers no evidence that the FBI commonly takes over investigations months after other agencies have declined to refer the matter. *See* Dkt. 43-9 (Exhibit I); Dkt. 43-38 (Exhibit LL).

The government also does not dispute that its nearly year-long delay between Mr. Comey's post and the indictment sharply contrasts with the government's typical approach of quickly charging and arresting an individual upon threatening the President. Mot. 26. Instead, the government contends (at 25) that "separation of powers principles preclude" courts from even considering this irregular delay. But courts regularly consider charging delays when evaluating vindictive prosecution claims. *See, e.g.*, *United States v. Zakhari*, 85 F.4th 367, 383 (6th Cir. 2023) (noting seven-month lag between first and second indictments); *Abrego Garcia*, 802 F. Supp. 3d at 1064-65 (discussing atypical, years-long delay in bringing charges). That is because atypical delays can indicate that a prosecution was based not on a good-faith application of law to fact but instead based on animus.

The record belies the government's claim (at 25) that its 348-day delay in seeking the indictment "confirms this was a genuine investigation." Not a single piece of evidence cited by the government in its oppositions or search warrants was obtained in the ten months between June 2025 and the issuance of the indictment on April 28, 2026. Instead, nearly all the government's evidence—including the post itself, Mr. Comey's novel, and texts from Patrice Comey and Person-1—stems from the week the post was published (May 15-22, 2025). *See* Dkt. 54 at 3-11. Other evidence cited by the government, such as its interview with former mafia member Salvatore Gravano, was collected *after* the indictment issued—and so cannot possibly explain the government's delay in seeking that indictment. *See id.* at 9.

### D. At A Minimum, Objective Evidence Establishes A Presumption Of Vindictiveness, Meriting An Evidentiary Hearing

At the very least, the "circumstances" here "pose a realistic likelihood of 'vindictiveness,'" such that vindictiveness should be presumed and the burden shifted to the government "to present objective evidence justifying its conduct." *Wilson*, 262 F.3d at 314-15 (citations omitted).

1. The government errs in arguing (at 20-21) that a presumption of vindictiveness cannot apply to prosecutors' initial charging decisions. Though the presumption "will rarely, if ever, be applied to prosecutors' pretrial decisions," nothing precludes its application in the appropriate case. *Wilson*, 262 F.3d at 315.[7] When "additional facts combine with" a sequence of events in which the government has brought or increased charges after the defendant exercised a legal right, "a presumption will lie in the pretrial context." *Meyer*, 810 F.2d at 1246; *accord United States v. Raymer*, 941 F.2d 1031, 1040 (10th Cir. 1991) (rejecting government's argument that presumption is unavailable in pretrial context); *SPLC*, 2026 WL 2280675, at *9 (same). Any other rule would run counter to Rule 12(b)(3), which expressly allows for pretrial motions to dismiss based on vindictive prosecution. *See* Fed. R. Crim. P. 12(b)(3)(iv). Applying the presumption here would therefore not be "unprecedented." Opp. 21. *See Meyer*, 810 F.2d at 1246 (applying presumption of vindictiveness in pretrial setting); *Adams*, 870 F.2d at 1146 (applying presumption to initial charging decision); *Carey*, 816 F. Supp. 3d at 138-141 (same); *Abrego Garcia*, 802 F. Supp. 3d at 1060-65 (same). And the government's proposed categorical rule would perversely allow for seriatim vindictive indictments against a disfavored defendant at the President's command.

Nor does the LaFave treatise cited by the government support its *per se* rule. Although the treatise states that a defendant must summon proof of actual vindictive motive to challenge an initial charging decision, the cases it cites do not establish any categorical rule. Instead, they simply hold that the government's filing of new charges after an unfavorable result in another case "does not, *without more*, give rise to a presumption of vindictiveness." Wayne R. LaFave et al.,

[7] Indeed, *Wilson* assumed that the defendant could successfully challenge an initial indictment, holding only that the evidence of animus and connection to the prior prosecution was too thin. *See* 262 F.3d at 318-19. So too in *Ball*, where the Fourth Circuit held that the defendant presented insufficient evidence to "rebut the presumption that his federal prosecution was legitimate" when it was an initial charging decision. 18 F.4th at 456.

Criminal Procedure § 13.5(a) (quoting *United States v. Johnson*, 171 F.3d 139 (2d Cir. 1999) (emphasis added)). The record here amply supports a causal chain, not a mere coincidence of timing. And the treatise expressly acknowledges "that an initial decision to prosecute might be undertaken to chill the exercise of rights," LaFave, at § 13.5(a)—precisely what happened here.

Although some courts have hesitated to apply the presumption pretrial, none of their animating reasons exists here. Most notably, courts are reluctant to presume vindictiveness if the sole indication is the addition of new charges after a defendant invoked routine pretrial rights, because "[i]n the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution." *Goodwin*, 457 U.S. at 381; *see*, *e.g.*, *Villa*, 70 F.4th at 711. Here, by contrast, only the initial indictment is at issue, and the government cites no additional evidence learned post-dismissal of the Virginia indictment that prompted this one; to the contrary, its investigation developed only powerful exculpatory evidence (such as the absence of "86" as a synonym for "kill" in mob prosecutions). *See supra* p. 12. And while it is true that defendants "routinely" invoke procedural rights pretrial, *Goodwin*, 457 U.S. at 381, Mr. Comey's successful challenge to the Virginia prosecution, which undermined the functioning of an entire U.S. Attorney's Office, was far from routine.

This case resembles those in which courts have applied the presumption pretrial. As in *P.H.E.*, the purportedly initial charging decision is downstream of a coordinated campaign that yielded a prior failed prosecution in another jurisdiction against the same defendant. 965 F.2d at 851-52; *see also Abrego Garcia*, 802 F. Supp. 3d at 1059-60. President Trump's call for Mr. Comey's prosecution, the failed Virginia prosecution, Mr. Blanche's promise to target Mr. Trump's enemies, and the resuscitation of this case, Mot. 9-18, demonstrate an "extensive government campaign, of which this indictment is only a part," *P.H.E.*, 965 F.2d at 855. And

unlike in the garden-variety case where the defendant asks the court to infer animus from the charging decision itself, here there is a developed record of Mr. Comey's expressive activity and government animus preceding the indictment. *E.g.*, *Adams*, 870 F.2d at 1142-44 (defendant's protected lawsuit and resulting reports of animus preceded indictment).

The government's fallback arguments against a presumption likewise fail. To begin, Mr. Comey need not prove that Mr. Boyle himself had a "personal stake" in Mr. Comey's prosecution to merit a presumption of vindictiveness. *Cf.* Opp. 22. As with actual vindictiveness, it suffices that the bearer of animus "prevail[ed] upon" the prosecutor to bring charges. *Adams*, 870 F.2d at 1146. For example, in *Abrego Garcia*, the district court applied the presumption of vindictiveness where the record demonstrated a likelihood that the *government* had a stake in retaliating against the defendant, regardless of the individual charging prosecutor's attitude. 802 F. Supp. 3d at 1064; *see also Meyer*, 810 F.2d at 1248 (applying presumption based on "conduct of the government as a whole"). *Wilson* is not to the contrary. There, the Fourth Circuit declined to apply a presumption of vindictiveness in part because of the charging prosecutor's lack of animus against the defendant. But that was because no evidence suggested the charging prosecutor "was required to act on the request [to prosecute] or felt any compunction to act," leaving no basis to impute a separate governmental official's animus to the charging prosecutor. *Wilson*, 262 F.3d at 316, 320. As explained above, substantial evidence supports imputation here.

Nor does the government's observation (at 24) that its investigation here predated the Virginia indictment undermine the likelihood of vindictiveness. Shortly after the Secret Service opened the investigation—and undertook steps that its participants described as "overkill" and "legally questionable," Mot. 9-10—the Secret Service categorized the case as "non-referred." Dkt. 43 ¶ 34. Moreover, according to unrebutted reporting, both Ms. Bondi and Mr. Blanche believed

the resulting evidence and case against Mr. Comey were weak. *See* Mot. 15-16. That evidence supports the inference that the government placed this investigation on the back-burner while it pursued the Virginia prosecution, which Ms. Bondi believed was stronger. *Id.* at 16. It was only after Mr. Comey prevailed in the Virginia case—and the President increased pressure on Mr. Blanche to "audition" for the Attorney General role—that the government suddenly reinvigorated this investigation and indicted Mr. Comey. Mot. 10-18, 25.

## II. THE GOVERNMENT SELECTIVELY PROSECUTED MR. COMEY BECAUSE THE PRESIDENT PERCEIVES HIM AS A POLITICAL ADVERSARY

The record here also establishes that the government singled Mr. Comey out for prosecution in violation of equal protection principles.

### A. The Evidence Shows Direct Admissions Of Animus

The government does not deny that a direct admission of discriminatory purpose can establish both discriminatory effect and intent. Instead, it contests (at 27) that President Trump made a direct admission. But the record shows the President's prolonged series of attacks on Mr. Comey; that his attacks responded to Mr. Comey's public speech; that he levied charges of criminality without facts; and that he capped his pattern of invective with his explicit September 20th call to prosecute. Beginning only days after the President's directive and extending to today, the government has relentlessly threatened Mr. Comey's liberty with indictments and prosecutions.

The government asserts (at 27) that the President's post "was not a direct order" because it "references multiple individuals . . . none of which have also been indicted." In fact, the government attempted to prosecute each of the individuals named in the post, obtaining an indictment (since dismissed) against Letitia James and attempting the same for Adam Schiff. *See* *United States v. James*, 810 F. Supp. 3d 752 (E.D. Va. 2025); *Grand Juries Weighing Criminal Charges for Tish James, Adam Schiff: Sources*, N.Y. Post (Aug. 8, 2025), https://perma.cc/ZV8Q-

FRAX. Nor is the post a "neutral communication" from one prosecutor to another. Opp. 27; *see Wilson,* 262 F.3d at 320. The communication took place against the backdrop of the President's past inflammatory statements about Mr. Comey triggered by his protected speech. And unlike the communication in *Wilson*, which expressed the "legitimate prosecutorial motive" that the defendant might "pose a danger to the community," *id.*, the President's post names three individuals connected only by their political opposition to him and thus reveals his illegitimate motive of revenge. Donald J. Trump, Truth Social (Sep. 20, 2025; 18:44 ET), https://perma.cc/A7RW-2TEC ("They impeached me twice, and indicted me (5 times!)[.]").

**B. The Evidence Shows Discriminatory Effect And Discriminatory Purpose**

The record here also establishes "clear evidence" that similarly situated individuals to Mr. Comey were not prosecuted and that the decision to prosecute Mr. Comey reflected discriminatory purpose. *Armstrong*, 517 U.S. at 464-65.

1. Mr. Comey has established discriminatory effect by identifying numerous instances in which the government "failed to prosecute others who are similarly situated to" Mr. Comey. *Armstrong*, 517 U.S. at 469. The government argues (at 28) that Mr. Comey is not similarly situated to others who have posted "8645," "8646," and "8647" because the "surrounding context" for Mr. Comey's post "guides the analysis." But that surrounding context supports—rather than defeats—Mr. Comey's argument. As explained above (*supra* at p. 12), the government attempted to change its position on "86 47" to treat it as a threat across the board immediately after (and because of) Mr. Comey's post, but then abruptly reversed course because the phrase was so common that the policy resulted in an unmanageable deluge of political statements—which the Secret Service evidently assessed as not true threats (just as it apparently did with Mr. Comey). The government's immediate, aggressive response to Mr. Comey's post (which quickly faded

when it turned up no evidence) also could not have been driven by the contents of Mr. Comey's novel, which had not yet been published. *Contra* Opp. 28 (pointing to the novel as context, despite the dissimilarity between the novel's protagonist and Mr. Comey's political seashells post). Nor could its response have derived from Mr. Comey's hypothesized exposure to "86" as an alleged term of violence in his tenure as a "former FBI Director and mob prosecutor." Opp. 28. As explained above (*supra* at 12), the government attempted to substantiate this theory and repeatedly failed. Instead, the post on its face contains a shorthand of political opposition prevalent at protests and on social media in the preceding months. ECF No. 33 at 12-16.

The government asserts (at 28-29) that the comparators Mr. Comey identifies are not similarly situated with respect to "whether a reasonable viewer would perceive their statements as true threats." But as explained (Mot. 35-37), those comparators made statements at least as directly suggestive of violence than Mr. Comey's post (if not far more so), and the government does not dispute that it never investigated those speakers, let alone attempted to prosecute them. The government does not even mention, let alone distinguish, two of the comparators that are most damning for the government—Joe DiGenova and Jack Posobiec. *Id.* at 35.

The government responds (at 28-29) that no "other evidence support[s] prosecution for [the] four alleged comparators." But no such evidence exists in Mr. Comey's case—and there is in fact such evidence for the comparators. As the Fourth Circuit has recognized, "direction[s] to others" can constitute a threat if "commands in the past" were "carried out." *United States v. White*, 670 F.3d 498, 513 (4th Cir. 2012). One of Mr. Comey's comparators, Mr. Posobiec, posted "8646" in the wake of previous, inflammatory social media posts amplifying false claims that children were being abused at a restaurant—which led an armed individual to travel to the restaurant and open fire. Marc Fisher, et al., *Pizzagate: From Rumor, to Hashtag, to Gunfire in*

*D.C.*, Denver Post (Dec. 6, 2016), https://perma.cc/GQ9A-BC5W. The government never suggests that similar evidence exists for Mr. Comey (nor could it). And the government never explains how its attempted parsing of "conditional or past tense language"—or the need to focus only on statements as to a "sitting President"—can distinguish "8646" from "8647."[8] Opp. 28.

2. In light of those disparities in treatment in similar cases, it is clear that the "decision to prosecute was 'invidious or in bad faith.'" *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996) (citation omitted). The government's opposition (at 29) gestures at "dozens of cases" it has pursued "involving threats against all sorts of individuals," without elaboration as to the charged conduct. Opp. 29. Yet as the government recognizes, those cases only matter if they share relevant factors with Mr. Comey's, such as if they involved "comparable . . . statements about public officials." *Id.* at 27-28 (quoting *Olvis*, 97 F.3d 739). Mr. Comey need not show that the government has ceased all legitimate threats prosecutions to prevail in this motion.[9]

**CONCLUSION**

For the foregoing reasons, the indictment should be dismissed with prejudice.[10] Alternatively, the Court should order discovery and a hearing on vindictive and selective prosecution.

[8] Rep. Gosar's video showing him attacking President Biden (ignored by the government) is likewise not conditional, nor is Mr. DiGenova's statement that Mr. Krebs "should be drawn and quartered." By using "should," not "would," the latter invokes a modal auxiliary construction expressing a deontic judgment. Am. Heritage Dictionary, "should" – Usage Note ("To express duty or obligation, *should* is required and functions as the equivalent of *ought to*.").

[9] The only comparator the government cites (at 29) involved an individual posting statements threatening the life of President Biden and his family, as well as the investigating Secret Service officer. *Contrast* U.S. Att'y's Off., E.D.N.C., *Raleigh Man Sentenced to Federal Prison for Threatening to Kill POTUS and U.S. Secret Service Agent* (Dec. 8, 2025), https://perma.cc/3REV-UKCA, *with* Mot. 8 (detailing Mr. Comey's cooperation with Secret Service).

[10] The government does not contest that if the indictment is dismissed, that dismissal should be with prejudice.

Dated: September 1, 2026

Respectfully submitted,

JAMES B. COMEY, JR.
By Counsel

*/s/ Joseph Zeszotarski*
Joseph Zeszotarski
(N.C. Bar No. 21310)
Gammon & Zeszotarski, PLLC
P.O. Box 1127
Raleigh, NC 27602
Telephone: 919-521-5878
jzeszotarski@ghz-law.com

*Local Rule 57.1 Counsel for Defendant*

Patrick J. Fitzgerald*
(Mich. Bar No. P86579)
P.O. Box 277
New Buffalo, MI 49177
Telephone: (312) 758-4454
patrickjfitzgeraldlawoffice@gmail.com

*/s/ Ephraim A. McDowell*
Ephraim A. McDowell*
(D.C. Bar No. 1631429)
Alexander J. Kasner*
(Cal. Bar No. 310637)
Elias S. Kim*
(D.C. Bar No. 1673678)
Claire Groden*
(D.C. Bar No. 1738682)
Dev P. Ranjan*
(D.C. Bar No. 90019329)
COOLEY LLP
1299 Pennsylvania Ave. NW, Suite 700
Washington, DC 20004
Telephone: (202) 842-7800
emcdowell@cooley.com
akasner@cooley.com
ekim@cooley.com
cgroden@cooley.com
dranjan@cooley.com

Rebekah Donaleski*

(N.Y. Bar No. 4986246)
Mikhaila R. Fogel*
(Mass. Bar No. 713095)
COOLEY LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6000
rdonaleski@cooley.com
mfogel@cooley.com

Michael R. Dreeben*
(D.C. Bar No. 370576)
600 New Jersey Ave. NW
Washington, DC 20001
Telephone: (202) 695-2562

**Special Appearance pursuant to Local Criminal Rule 57.1(e)*

*Counsel for Defendant James B. Comey, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 1st day of September 2026, a true copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Ephraim A. McDowell*
Ephraim A. McDowell
*Counsel for Defendant James B. Comey, Jr.*